We'll turn to the second argument today, which is in 21-374 One World, LLC. Good morning, Honorable Judges of the Court. Bob Casoles, member with the law firm of Brock Eichler, LLC. On behalf of One World, LLC and Mr. Gabriel Carlitis, docket number 21-374. Thank you so much. Why did he keep giving money to these guys? Well, because they were making intensely false and material misrepresentations and continuously systematically. He had entrusted them with managing the company, with helping him with his operations in the United States. Obviously a very busy man, and they were able to take Certainly, I mean, Mr. Carlitos, his father was basically the de facto Archbishop of Constantinople worldwide here in the United States. My client developed a relationship with him. He's involved in the Greek Orthodox Church, so he had trusted Mr. Carlitos. Mr. Onoufriadis had been recommended by a colleague of Mr. Carlitis in Greece. Mr. Onoufriadis in turn brought Mr. Carlitos into the equation. And based on those trust relationships, so to speak, they were developed over the course of time. Mr. Carlitos just brought Mr. Rogers into the equation because they had a longstanding friendly relationship and business relationship. So that's how it came about, Your Honor. Thank you. You may proceed. I just, I wanted to know if we were just bailing out someone, you were trying to bailing out someone who was negligent in his own personal affairs. Given his success, Your Honor, I think certainly not in other areas. However, it was his first venture into the United States and he relied on different people here and things didn't work out the way he had anticipated. If I can just ask you about close-ended continuity, I'm having a hard time. I know you have other evidence that you say extends the amount of time. Let's just stick with what was in the complaint. You have 10 wires in less than nine months. The district court assumed there could be two other predicate acts that get you up to approximately 15 months. I think you're correct that it's not impossible to show close-ended continuity for conduct that took place within less than two years. But it would have to be, I think the case uses terms like extremely complex to indicate some ongoing threat of activity. And I don't really see what was complex about the alleged fraud here. It's really one, in essence, one victim. And it's the number of predicate acts, but they're all just wires. The fact that there's multiple wires doesn't make something complex. So if you could explain to me why this would be a complex scheme. So your honor, and obviously I don't know whether or not the court is going to invoke Rothman and look at the allegations and the other complaints in Eastern District of Pennsylvania, District of Massachusetts. But in this particular circumstance, we had three individuals who have used multiple accounts. They've used their individual accounts. They've used One World's accounts. They have used the attorney's IALTA account. They have used a company set up by them, which we allege in Eastern District of Pennsylvania case, Rogers Investments, LLC, to further transfer funds. Mr. Carloutsas has used an entity called Mack Consulting. We have a Greek company in Greece called Kamavi and its banking account involved in the scheme. We then have at least three different banks overseas that have been used to repatriate funds based on the other allegations we've asked the court to take Cyprus, Hellenic Bank, National Bank of Greece. We have all these various transfers to different real properties that the parties purchased. And there's a lot of players involved in this too. There's Mr. Ornotriades, there's his brother, his cousin in Greece, Senores. There's Mr. Carloutsas, there's his company, there's Mr. Rogers. There are other entities we've pursued in other jurisdictions, for example, Power to You Consulting. So let me ask the question that I think Judge Bianco was asking. Why isn't this just, as the district court described it, theft and conversion and not a RICO conspiracy? Well, it's not because, and again, I've asked the court to invoke Rothman. And if you invoke Rothman and you allow me to amend the pleading below to include all of the almost, I'd say a hundred additional predicate acts that have taken place between February, March 2018, and at least through March of 2020. As a matter of fact, in the Manolakos case up in the District of Massachusetts, we found transfers every month up until December 2020, which gets us close to three years. But if we're allowed to make these allegations either in the court here below or in the District of Pennsylvania, I think it's a very highly complex scheme and very difficult for a U.S. attorney or a deputy U.S. attorney to sit down and put all this together. I mean, again, it's still one victim though. Even if you include the additional evidence, you're not alleging there's more than one victim beyond your client, right? Well, technically there's two, right? There's the client and there's the company. I know, but he's solely, you know, that's just a vehicle for him investing the money, right? Acknowledged. Interestingly enough, Mr. Arnufriades in his case in federal court now alleges he somehow still owns interest in the company. But be as amazed, the other factors, the number of parties is very complex. Number of accounts used is very complex. The amount of money is finite. It was what the plaintiff put into this, and when he stopped putting it in, when he realized he was being defrauded. So the number of transactions is not as relevant as the amount of money, which was cut off at a certain point. Finite. Isn't that correct? That is actually, with all respect, not correct to the district court below. And I really wanted to highlight that today. And obviously Judge Cabranes has the GICC case. In the GICC case, he had a very small amount of funds, about half a million dollars. It was a promissory note and the plaintiff acknowledged that all the money in the company had been looted. So there was no conceivable way to, I mean, that's not applied to open-ended continuity. We're talking about closed-ended, I think. But in that case, there was no way to have future criminal activity take place because there was no funds left to misappropriate. We never made the allegation in this complaint. It will not be seen in the complaint below that the funds had been fully depleted or that there's no additional funds left in the company. To the contrary, there was 12 and a half million dollars still left in a investment account for One World, and there was still additional funds left over in other accounts. But didn't the plaintiff stop access to those funds when he realized he was being defrauded? He did cut Mr. Nufriadis off in April 2019. However, Mr. Rogers continued to be the CLO of the company and he did continue to work with Mr. Carluzos. We never made the allegation he stopped working with those individuals. We just pointed out that he removed Mr. Nufriadis from a management position and from having access to the accounts. That doesn't mean, though, axiomatically, that after Mr. Nufriadis was removed, he couldn't continue to execute the scheme to fully put the funds beyond my client's reach or to complete the scheme. So I think the distinction is in GICC, for example, where the concept of inherent terminability arose, I believe, the plaintiff acknowledged there was no more money. So that was the end of the scheme. We never made that acknowledgement here. It's not actually accurate below. And as we've alleged in the EDPA case, as well as the... What allegation is there, even if there was some money left and they might continue to try to take your client's money, what allegation is there that once your client's money was gone, whenever that might be, that they were going to seek additional money from other investors and do the same thing? What allegation is made regarding that? I can't speak for other investors. I'd be speculative. I can only speak for what happened after this and what we've alleged in the District of Massachusetts, because we got it from the bank statements, is Mr. Nufriadis set up loan schemes with Mr. Manolacos. No, but that's critical for open-ended continuity. In other words, just because your client had some money left and they might've tried to go after that money somehow doesn't mean that this enterprise, as you allege it, was going to continue beyond, as Judge Poole writes, it was finite. In other words, when your client's money was gone, the scheme was over, as far as your allegations go. So if we're on the issue of open-ended continuity, I would, with all respect, disagree with the court for the following reasons. First of all, we've alleged in the complaint that the association, in fact, practice is solely racketeering. We haven't made any allegations in the complaint that there were any kind of legitimate business. Whatever they did as an association was basically to defraud my client or whatever it was. There's no indication or complaint. We ever alleged this was legitimate business. So I'll believe under DeFalco and I think Cofacredit, I can't remember the exact cases, where the allegation is that the association itself engages exclusively in racketeering activity. It can be inferred from a pleading that open-ended continuity can be established because there is a continued- In DeFalco, the court found there was no indication that they intended on stopping. They were going to keep going. It wasn't based, the finding of open-ended continuity in that case was not based upon what you're suggesting. It was based on the fact that it was going to keep going, whether it's entirely criminal or not. And I acknowledge that, Judge. However, we've alleged that Mr. Calagese, while this was going on, took proactive steps to interfere with their ability to continue the open-ended continuity with a future threat of criminal activity going forward by removing Mr. Mofidiotis, by asking for the accounting, by pursuing certain actions in Greece, by trying to get the pro-can investment back. Had he not done that based on our complaint, this would have continued indefinitely to the future. And going back to the issue of inherent terminability- Only if he continued to put money in, would it continue into the future, correct? He didn't have to continue putting money in, because there were still tens of millions of dollars in the account for them to prolong and to misappropriate and to divert to other sources. That's- You mean the money was already stolen and they would steal it again? There were still unstolen funds in One World LLC's account, well, Mr. Rogers' account, and a Hancock Whitney account, as well as an Alex Brown account. That was there to be misappropriated. Had Mr. Calagese not taken some proactive measures to stop future criminal activity by the enterprise in misappropriating those funds as well. So it's very distinct- Are you talking about rotating the funds that were already stolen into other transactions, and that you consider that open-ended? No, I'm talking about funds that were still in the company and the company's bank accounts and investment accounts after the approximately $10 million had been diverted overseas internationally. Separate set of funds. There was no depletion of all funds in this company. If you accept the district court's turnable, then a company that has $12, $13 million at a minimum still lying around, after its funds have been stolen, a court could come and say, well, there's still funds there, but the scheme was inherently turnable because you removed the manager from the company, one of them. There's still money there that could have been prolonged. It wasn't a total depletion of funds in the company, and we never alleged that they depleted the funds. In GICC, Judge Cabrera, it's his honor's opinion, made it very clear the plaintiff had acknowledged there was no funds left in the company to prolong. That was not the case here. It just wasn't. There was plenty of funds still left to misappropriate in the company. Had my client not taken the proactive measures? By the way, I do want to point out, the funds after they were misappropriated internationally, that scheme's still being executed. If the court invokes Rothman and does give judicial notice to the allegations we've made in the other cases, this is going on to this day, misappropriated funds back to the this court that says once someone discovers something, takes some proactive measures, and files a lawsuit, that axiomatically precludes the scheme from moving forward if the co-conspirators are still executing the scheme behind the scenes. Thank you, Mr. Casillas. Thank you, Your Honor. David, we'll have an extra time, and you'll reserve some time. So we'll hear from opposing counsel. Your Honor, which opposing counsel? There are two. Did you want to go first? Whichever you think would be most helpful to your cause. Well, since I'm on, I will go forth, and thank you. I'm Randall Racey, attorney for Michael Carluzos, the defendant and appellee here. The problem with the plaintiff's argument regarding predicate acts and pattern of racketeering is that they're just tacking on any transaction and calling it a predicate act without actually explaining why it was wire fraud or why it was connected to the fraudulent at the beginning, that the fraud occurred when the funds were transferred, allegedly, from One World's accounts to the accounts of the Greek companies, Conmave and Bioprocan. And let's be clear, they've alleged... Counsel, I know you're not admitting the fraud, but what you're arguing here is that this wasn't a RICO conspiracy. Is that correct? Exactly. I mean, we're also arguing there's no fraud, but it wasn't a RICO conspiracy. It wasn't a complex set of transactions, and it's... You're just saying garden variety theft. That's what Judge McMahon found, and to the extent of the allegations, yes, he's alleged garden variety theft. And I just want to make the point, if I may, that the conspiracy that they alleged that my client, Mr. Carluzos, was involved in was what they call the Greek medicinal cannabis scam. They claim that that was a fraud ab initio, that they repeatedly referred to the two Greek companies, quote, phony companies, and that there was never any purpose, any legitimate purpose to pursue a medicinal cannabis scheme in Greece. We now know that's not true because of evidence in the record outside the pleadings, but for the purpose of their pleadings, they've alleged that this fraud occurred when the money went from One World's accounts to Greece. Anything that happened after that, the disbursal of monies throughout various companies in Greece and to different parties, those really cannot be part of the... Those are just disbursal of already stolen funds. They weren't part of the fraud on the plaintiffs. So... Well, this case is a really good example of why we have notice pleading standards and why the Supreme Court and Iqbal Entwambly impose the plausibility standards. They've alleged nothing but conclusory allegations against my client, Michael Carluzos, and for the most part against James Rogers also. They've alleged that Unifriadis was transferring money to a company that he admits his brother controlled in Greece. Also, the only person they allege had access to One World's accounts was Mr. Unifriadis. So once Mr. Unifriadis was out of the company in 2019, even when Mr. Rogers remained as a company officer, he had no access to those accounts. They don't allege and he did, and we know for a fact that that's true. He had no access to them. So as you pointed out with Mr. Kosalas, the predicate acts necessarily had to end, the pattern of racketeering activity had to end when they severed access to One World's accounts from any of the defendants and access remained solely with Mr. Chalepis. So assuming that Mr. Kosalas can get service, he could bring this as a theft and conversion case. Isn't that correct? Yes, he's already started an action in the Eastern District of Pennsylvania only against my client, Mr. Carluccios and Mr. Rogers. He has a separate case pending in Massachusetts against Mr. Unifriadis on the same claims. This case is all about taking a theft and conversion case and trying to make it a RICO case. Isn't that what this is all about? That's certainly how we see it and that's how Judge McMann correctly saw it. Mr. Racey, I just wanted to go back to something you said, because I'm not sure I would agree with your proposition that once if money is converted for an illegal investment, trying to misappropriate money, that once the money is in Greece, everything else that happens after that can't be considered for purposes of trying to look at whether or not there's either closed-ended or open-ended continuity. I'm not sure I would agree with that, because the case law does look at, for example, if you had a complex laundering scheme to conceal the fraud after the money was taken, certainly a court can look at all those things to see whether or not how complex it was, whether it was going to be ongoing. So I think you're too narrowly interpreting the case law as it relates to looking at closed-ended or open-ended continuity. Am I missing something? Perhaps I wasn't clear enough and I understand what you're saying and don't disagree, but the point here is that they could have alleged that plaintiffs used arguably legitimate, that the defendants used an arguably legitimate business investment opportunity in Greece to defraud the plaintiffs, that there was, and we actually know they should have alleged that, because we actually know that they actually did use some of their money, some of the plaintiff's purchase land for cultivation to pursue the required licenses from the court, but in their complaint, they allege, they deny all of that and they allege that this was a fraud ab initio. So in this case, there's no complicated money laundering scheme. They don't allege money laundering. It just, the fraud took place, the theft took place when the money left One World's by Mr. Onufriadis' brother. All right, thanks for the clarification. Thank you. Thank you. We'll hear from Ms. Dimitri. Good morning, your honors. May it please the court, my name is Mackenzie Dimitri. I'm here today representing Nicholas Onufriadis and I'm here to respectfully request that this court affirm the lower court's decision for the reasons that we've discussed. I think that the lower court was correct in holding there's no closed ended continuity here. The timeframe, the alleged scheme is fairly simple, as your honors have pointed out. The allegations in the amended complaint and the RICO statement described 10 wire transfers over a period of nine months. The lower court generously added, identified two possible other predicate acts, which would only extend the timeframe of the alleged pattern of racketeering to 15 months. And any other additional documents or additional documentation that appellant's attempting to introduce improperly on the record here today, as I think has been discussed already, doesn't extend the time period of the predicate acts. Essentially, it's more documentation following the money. So there's extensive allegations and documentation purporting to show what the defendants may have spent money on. For example, whether it's boats or planes or yachts or homes, showing that there are various transfers between certain third parties and some of the defendants. And there's no real effort made to tie those into the original fraud, which based on the pleadings, is the entire basis for the RICO claim. So the fraud here, it's pretty simple. It's the theft of money that was invested into One World. And for that reason, I also think that the lower court was correct in its determination that there was no open ended continuity, because there's a finite amount of money that was invested into One World. And that money could be stolen. Once it was exhausted, there would be no possibility of additional fraud. On top of that, the court actually pointed out, the lower court pointed out that since 2018, there was no additional theft from One World. And here again, the additional documentation describes what happened to the during 2018. It doesn't describe additional theft of additional funds. And in fact, what we've learned is that there's 12 and a half million dollars sitting in an account. And whether or not defendants retain access to this day is unclear to me. I know that Mr. Onofriadis allegedly doesn't have access and hasn't had access since 2020. But presumably, access could be turned off, which would, again, make the pattern of racketeering terminable. Or you have a scenario where the money essentially runs out. Also, I think what the lower court said that was interesting is just that it was an isolated scheme that had run its conclusion. There was a certain amount that was being stolen in furtherance of an allegedly fraudulent investment related to the Greek cannabis, so-called scam. And once that had concluded, there was no reason or justification for additional theft. And there's been no allegations that there were any other and further acts intended to induce further theft. There were no more promissory notes. There were no more additional representations made. And access by the defendants was cut off. I would also argue that the lower court was correct in its determination that there was only one injury. The money was stolen from One World, and that's the extent of the injuries that were suffered by the appellant. There was no injury from the investment. The fact that the defendants allegedly purchased homes or sent money to family members or friends or purchased boats or cars or whatever else with their money was not a separate and distinct injury. They also did not invest the money into a separate enterprise intended to continue the fraud. So, there's no allegation here that sustains damages under the RICO statute. I think what we've really heard is that there's no basis to hold that the lower court abused its discretion, particularly not based on documents and facts that are outside of the record. But there's no basis to say that this satisfies the requirements for closed-ended or open-ended continuity. And I'm happy to answer any of your questions or respectfully request that this court affirm the lower court's decision. Thank you. Any questions from my colleagues? No, thank you. All right. Mr. Kasolis, is there some time left? Thank you, Your Honor. I'll try and be brief. What opposing counsel is essentially arguing is that it would be futile had the court allowed me to amend the pleadings below. And what I've tried to do since I was not allowed to amend or submit an amended pleading below, I tried to highlight to the court by referencing the other cases in District of Pennsylvania and District of Massachusetts how it would have gone about amending the pleading to correct the identified deficiencies. I'd have almost 100 predicate acts exceeding more than two years, mail fraud, wire fraud, and bank application fraud. I believe I would have open-ended continuity because we've alleged that the association amongst the three parties plus the other co-conspirators was exclusively racketeering. My client is the one that cut it off from proceeding further. At the time my client cut off the money, discovered the fraud, there were still funds remaining in the company, millions of dollars that could have been prolonged had he not taken a proactive measures. And certainly that raised a dispute of fact below as to whether or not there would have been future open-ended continuity or future threat of criminal activity taking place going forward. With respect to the issue of whether leave to amend their abuse of discretion took place below, there was no effort to delay on my client's part. There was no bad faith. I actually amended the pleading before either party filed a pleading and before the district court identified any deficiencies it perceived with the allegation of the complaint. This wasn't where I made a motion for leave to amend and then it was granted and I filed a new motion, a new pleading, and then the rule 12b6 motion was made and I lost with prejudice. This was right off the top. So I believe I was able to cure the defects for open-ended continuity, closed-ended continuity, had I had the opportunity to amend the pleading below based on what I've now learned in the other cases and based on the allegations I had made in other complaints in other district courts. I know we can't look at that what you've now learned, right? We can't take what you've now learned and say the district court abused its discretion and not giving you leave to replead because you've now learned something new, right? That's not what I'm saying. What I'm saying is I would have amended the pleading had it been given the opportunity below. I say now and at the time to include these additional allegations in an amended pleading. You're saying you had those at the time. I did not have these at the time. I acknowledge that. How could the district have abused its discretion in denying you leave to replead to add something that you didn't have at the time? Because I don't have to replead right away. I could have proceeded in the case. I could have gained some basic discoveries. The identical discovery I would have obtained on the fraud and the conversion claims and I would have quickly learned about just like I did in the other cases and I would have made a motion within the trial court to move for leave to amend to reassert the RICO claim. Counsel? That's all I have, Your Honor. Counsel, I have a question. Assume for the sake of this question that we affirm the district court on the RICO claims. Will you bring this action as a theft and conversion case in New York or will the other actions suffice? Sir, I believe the other actions do suffice both in the Eastern District of Pennsylvania as well as the District of Massachusetts. I have pursued the identical state law claims that the district court below dismissed without prejudice for filing in another court of competent jurisdiction. So I don't intend on bringing if it should the court not reverse and I have the right to bring claims again going forward. I do not intend on bringing them before the Southern District. Thank you. I will assert them in the Eastern District as well as the District of Massachusetts. Thank you. Thank you, Mr. Casillas. Thank you, judges. We'll reserve decision and thank counsel for their arguments and we'll turn to the last case.